ACCEPTED
06-14-00105-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
2/2/2015 12:54:47 PM
DEBBIE AUTREY
CLERK

CASE NO. 6-14-00105CR

In The

COURT OF APPEALS
SIXTH DISTRICT OF TEXAS
AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

2/5/2015 10:28:00 AM

DEBBIE AUTREY
Clerk

_____

TIMOTHY PAUL BATES, Appellant

VS.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 2
of Hunt County, Texas
Trial Court Cause No.
Honorable F. Duncan Thomas, Judge Presiding

_____

**APPELLANT'S BRIEF**

_____

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Comes now the Appellant and submits this brief pursuant to the provisions of the

Texas Rules of Appellate Procedure I support of his request for the judgment of

conviction to be overturned in Cause No. 6-14-00105CR.

No Oral Arguments Requested

## IDENTITY OF PARTIES AND COUNSEL

So the members of the Court can determine disqualification and recusal under Texas Rules of Appellate Procedure 15 and 15a, Appellant certifies that the following is a complete list of the parties, attorneys, the trial court judge, and any other person who has any interest in the outcome of this matter

Appellant:
Timothy Pal Bates
105 Hilltop
Anna, TX 75409

Appellant's Attorney:
Jessica Edwards
P.O. Box 9318
Greenville, TX 75404

Appellant's Attorney at Trial:
Deric Walpole
5900 South Lake Forrest Drive, Suite 410
McKinney, TX 75070

Appelle:
The State of Texas by and through
Joel Littlefield
Hunt County Attorney
4th Floor Hunt County Courthouse
2507 Lee Street
Greenville, TX 75401

Appellee's Attorney at Trial:
Joseph O'Neil
Assistant County Attorney's
4th Floor Hunt County Courthouse
2507 Lee Street
Greenville, TX 75401

# TABLE OF CONTENTS

Identity of Parties and Counsel…………………………………………………………..2

Table of Contents…………………………………………………………………………3

Index of Authorities……………………………………………………………………….4

Statement of the Case……………………………………………………………………..5

Issue Presented……………………………………… ……………………………………5

Statement of the Facts……………………………………………………………………..5

Summary of the Argument………………………………………………………………..9

     **Point of Error One:**……………………………………………………………9
     The evidence is legally insufficient to prove beyond a reasonable doubt
     That Appellant operated a motor vehicle in a public place in Hunt
     County Texas, while intoxicated.

The Law………………………………………………………………….………10

Argument…………………………………………………………………………………11

Prayer for Relief…………………………………………………………………………17

Certificate of compliance of typeface and Word Count…………………………18

Certificate of Service…………………………………………………………………..18

# LIST OF AUTHORITIES

**Federal Case Authority**                                          **Page(s)**

*Jackson v. Virginia,* 443 U.S. 307……………………………………………………10


**State Cae Authority**

*Brooks v. State,* 323 S.W.3d 893 (Tex. Crim. App. 2010)………………………………10

*Laster v. State,* 275 S.W. 3D 512 (Tex. Crim. App. 2009)………………………………10

*Vodochodsky v. State,* 158 S.W.3d 502 (Tex. Crim. App. 2005)………………………..10

*Washington v. State,* 127 S.W.3d 197 (Tex. App. Houston [1ˢᵗ Dist. ] 2003, pet. Dism'd)……………………………………………….…………………………....…10


**Statutes and Rules**

**Texas Penal Code**

    Section 49.01……………………………………………………………………..11

## STATEMENT OF THE CASE

This is an appeal of judgment and sentence in a criminal case from the County Court at Law No.2, in Hunt County, Texas. Appellant was convicted by a jury of Driving While Intoxicated on May 13, 2014 in CR1301437.

Punishment was assessed by the Court and Appellant was sentenced to 180 days in the county jail, probated for twelve months, and a fine of $400. Notice of appeal was given on June 12, 2014.

## ISSUES PRESENTED

Issue One: The evidence is legally insufficient to prove beyond a reasonable doubt that Appellant committed the offense of Driving While Intoxicated.

## STATEMENT OF FACTS

On September 1, 2013, at approximately 1:30 a.m., Appellant walked into the Kwik-Check Convenience Store in Greenville, Texas . (R.R. 2, p. 24-25). The clerk on duty that night, Phillip Erickson, said that when Appellant walked in the store he "just seemed a little wired. That's how I describe it. Nothing, honestly too unusual for that time of night." (R.R. 2, p. 25-26). Mr. Erikson testified that Appellant approached Mr. Erikson and asked if he could buy alcohol, but Mr. Erickson could not sell alcohol to Appellant because of the time of night. (R.R. 2, .26) Mr. Erikson could not smell any odor of alcohol coming from Appellant during their encounter that evening. (R.R. 2, p. 26).

Throughout his testimony, Phillip Erickson described Appellant as being as acting "odd" (R.R. 2, p. 29) and "weird" (R.R. 2, p. 30), but testified that he didn't notice anything typically associated with being intoxicated such as glassy eyes, slurred speech or other symptoms of intoxication. (R.R. 2 p. 34). Instead, Mr. Erickson testified he believed Appellant was intoxicated because his body movements were "fidgety." (R.R. 2, p. 34).

The jury then heard from Greenville Police Officer Brandon West. Officer West testified that when he responded to the call for service on September 1, 2013, the only information he had was a person was attempting to buy beer after hours. (R.R. 2, p. 51). Officer West testified that he followed Appellant for about one block and that Appellant pulled over immediately and appropriately when Officer West activated his emergency lights.(R.R.2, p. 105). Officer West did not observe any bad driving by Appellant during the time he was following Appellant's vehicle and Appellant did not commit any traffic violations. (R.R. 2, p. 103-104). When Officer West was speaking to Appellant at the window of his vehicle, Officer West leaned into Appellant's vehicle to try to smell alcohol, but there was no odor of alcohol coming from Appellant or his vehicle. (R.R. 2, p. 52).

After asking Appellant to step out of his vehicle, Officer West initially performed the horizontal gaze nystagmus test improperly on Appellant. (R.R. 2, p. 55). When Officer West administered the test properly, he testified he observed six out of six

6

possible clues of intoxication. (R.R. 2, p. 60). Before Officer West conducted any tests on Appellant that required the use of his legs, Appellant explained to the Officer that he had trouble with his legs. (R.R. 2, p. 73). Appellant even showed Officer West scars on Appellant's right leg as evidence of his leg issues and told Officer West that he had just been to the doctor for said issues. (R.R. 2, p. 72-73). Officer West testified that he was aware that the NHTSA standards advise that persons with knee and back problems may have difficulty performing the standardized field sobriety tests. (R.R. 2, p. 94). Officer West chose to administer standardized field sobriety tests to Appellant, despite knowing Appellant had physical limitations with legs. (R.R. 2,p. 65). Officer West administered the one leg stand test on Appellant, in which he testified he observed two out of four possible clues of intoxication. (R.R. 2, p. 65). Officer West next had Appellant perform the walk and turn test, where he testified Appellant displayed three out of six possible clues of intoxication. (R.R. 2, p. 70). However, Officer West later corrected his testimony to reflect the fact that the walk and turn test has eight possible clues of intoxication. (R.R. 2, p 133). Officer West then had Appellant perform two non-physical tests to check for mental impairment and Appellant performed those tests "perfect, flawlessly" according to Officer West. (R.R. 2, p. 106-107). Officer West admitted during his testimony that Appellant passed the two tests that did not require the use of Appellant's damaged legs. (R.R. 2, p. 107).

7

When asked by the prosecuting attorney to describe Appellant's demeanor through the interaction, Officer West described Appellant as being arrogant and cocky. (R.R. 2, p. 71-72). Officer West testified that Appellant used foul language and was disrespectful to him throughout the interaction. (R.R. 2, p. 101). However, Officer West never observed Appellant to slur his speech, (R.R. 2, p.101) nor did he observe anything unusual about Appellant's eyes (R.R. 2, p. 117). Officer West described Appellant as being fairly articulate throughout the encounter. (R.R. 2, p. 101).

Appellant admitted to Officer West that he had taken a pain killer about two hours before the traffic stop. (R.R. 2, p. 74). Appellant also told Officer West that he was on anti-anxiety medication (R.R. 2, p. 75), however Officer West never asked Appellant if or when he had taken any medication on the day in question. (R.R. p. 123-124.). ). Officer West said he had no evidence or reason to believe that Appellant took his prescription medication other than the way it was prescribed. (R.R. 2, p. 122). Officer West did not know if, when or how much medication Appellant had taken at the time of his arrest. (R.R. 2, p. 123).

Officer West explained to the jury that a drug recognition expert was someone with specific training in determining whether or not someone is impaired due to the introduction of drugs into their system. (R.R. 2, p. 115) Brandon West is not a drug recognition expert. (R.R. 2, p. 93, 116).

8

Officer West testified that he was familiar with and trained in the NHTSA field sobriety testing protocol. (R.R. 2, p. 111). The Officer went on to testify that the accuracy studies in the NHTSA manual that demonstrate how accurate the HGN test is are based on alcohol studies, not prescription medication studies. (R.R. 2, p. 111). Officer West testified that there are no studies to show how accurate the HGN test is at predicting intoxication by prescription medications in the NHTSA manual. (R.R. 2, p. 111-112). Officer West further testified that there are prescription drugs that case nystagmus and that nystagamus caused by these prescription drugs is not necessarily a sign of intoxication. (R.R. 2, p. 112). Officer West testified that if a person exhibited nystagmus in a situation where no alcohol was present, there is a reasonable possibility that said person was not impaired. (R.R. 2, p. 112).

## SUMMARY OF THE ARGUMENT

### Point of Error No. 1:

The evidence is legally insufficient to prove beyond a reasonable doubt that Appellant operated a motor vehicle in a public place in Hunt County, Texas, while intoxicated.

## POINT OF ERROR NUMBER ONE

The evidence presented at trial could not have led a rational jury to find beyond a reasonable doubt that Appellant operated a vehicle in Hunt County, Texas while intoxicated. The State failed to prove that Appellant was intoxicated. Concluding so,

9

based on the evidence presented at trial, would have been speculation or suspicion by the factfinder. Thus, the evidence is legally insufficient to uphold the conviction in this case.

## The Law

In a criminal case, an appellant may raise legal sufficiency for the first time on appeal. *Washington v. State,* 127 S.W.3d 197 (Tex. App. Houston [1st Dist. ] 2003, pet. Dism'd). When reviewing legal sufficiency of the evidence, a court must look at all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense were proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319; *Vodochodsky v. State,* 158 S.W.3d 502 (Tex. Crim. App. 2005). While giving the proper deference to the factfinder's role, this court must safeguard against the rare occurrence when a factfinder does not act rationally. *Laster v. State,* 275 S.W. 3D 512 (Tex. Crim. App. 2009).

"Legal sufficiency of the evidence is a test of adequacy, not mere quantity. Sufficient evidence is 'such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded.' In criminal cases, only that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction. There is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson." Brooks v. State,* 323 S.W.3d 893, 917 (Tex. Crim. App. 2010).

10

**Argument**

According to Texas Penal Code Section 49.01, intoxication is defined as

(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or

(B) having an alcohol concentration of 0.08 or more.

The State failed to present sufficient evidence for a reasonable jury to conclude that Appellant was intoxicated under any of the legal definitions of intoxication. The only evidence presented at trial to attempt to prove intoxication was three standardized field sobriety tests that were administered to improper candidate for such tests.

It is undisputed from the record that Appellant did not commit any traffic offenses on the night of September 1, 2013 when he was arrested by Officer Brandon West. Neither of the State's witnesses observed any erratic driving. In fact, Officer West testified that Appellant responded immediately and appropriately when the Officer initiated the traffic stop. (R.R. 2, p. 105). The State's only two witnesses did not observe any signs typically associated with intoxications such as slurred speech, glassy eyes or unsteady gate. Neither did either of the State's witnesses smell alcohol on or about Appellants person.

Phillip Erickson, the clerk on duty at Kwik-Check that evening was not able to articulate any signs of intoxication when describing Appellant's behavior on the night in question. Mr. Erickson described Appellant as odd, weird, wiry and fidgety. Based on

11

those characteristics, Mr. Erickson concluded Appellant concluded that Appellant was intoxicated. However it is equally rational, if not more rational, that Appellant is an odd, fidgety individual.

Officer Brandon White testified that he determined Appellant was intoxicated based on the field sobriety tests administered to Appellant. However, the record is clear that the field sobriety tests administered that evening were not reliable based on Officer White's failure to follow the standards outlined by NHTSA and his failure to thoroughly investigate this case.

Officer White testified that he was aware that the NHTSA standards advise that persons with knee and back problems may have difficulty in performing the standardized field sobriety tests. (R.R. 2, p. 94). Officer West also testified that, before he conducted any tests on Appellant that required the use of his legs, Appellant explained to the Officer that he had trouble with his legs. (R.R. 2, p. 73). Appellant even showed Officer West scars on Appellant's right leg as evidence of his leg issues and told Officer West that he had just been to the doctor for said issues. (R.R. 2, p. 72-73). Nevertheless, Officer White conducted the tests that NHTSA advises will be compromised in such situations.

At trial, the jury learned that, not only was what Appellant told Officer White on the day his arrest true, but Appellant had documented medical issues that would severely compromise his performance on the walk and turn and the one leg stand. Appellant has severe physical issues, primarily with his legs and back that were in the medical records

12

admitted at trial. Among other issues, Appellant has had bone grafts in his leg, plates in his legs, and arthritis in both knees, back pain, Cervical Pain Syndrome, Degenerative Joint Disease, and had been treated for a fractured tibia, and wrist and elbow sprain. (C.R. 1, p. 6-232).

Under the circumstances and given the medical issues he faced on September 1, 2013, Appellant actually performed rather well on the walk and turn and the one leg stand. According to Officer White, Appellant showed on two our of a possible four clues on the one leg stand (R.R. 2, p. 65), and three out of a possible eight clues on the walk and turn. (R.R. 2, p. 70).

Given the documented medical issues and Officer White's own testimony at the protocols for administering the field sobriety tests warn that persons with this type of medical issues will have difficulty performing these tests, it is not rational for a jury to conclude that Appellant's performance on the walk and turn and the one leg stand was due to intoxication. It is far more rational and reasonable to conclude that Appellant's performance was due to the physical limitation presented by the problems with his legs and back.

Officer White had Appellant perform two field sobriety tests that looked solely for mental impairment and did not require the use of Appellant's much damaged legs. On those two tests, Officer White testified that Appellant performed flawlessly. (R.R. 2, p.

13

108-107).  The only rational conclusion to reach based on the evidence is that Appellant mental faculties were not impaired at the time of his arrest on September 1, 2013.

As the results of the walk and turn and one leg stand are not trustworthy due to Appellant's physical condition and the results of the alphabet and finger touch tests were flawless, the only other evidence of intoxication presented at trial was the horizontal gaze nystagmus test.  While Officer West testified that he observed six of a possible six clues for intoxication on the HGN tests, those results are not trustworthy as Officer White failed to properly screen Appellant for the hgn test.

According to the State's own witness, Officer White, there are no known studies that correlate the results of hgn to intoxication with any drug other than alcohol.  (R.R. 2, p. 111). As there is absolutely no proof that Appellant had any alcohol in his system at the time of his arrest, it is irrational to conclude that what Officer White observed during the hgn tests is evidence that Appellant was intoxicated.  Officer White testified that his own training has taught him that there are certain prescription drugs that can cause nystagmus to occur, and that nystagmus in the absence of the presence of alcohol does not indicate that a person is intoxicated. (R.R. p. 112).  Officer West testified that if a person exhibited nystagmus in a situation where no alcohol was present, there is a reasonable possibility that said person was not impaired. (R.R. 2, p. 112). That is precisely the situation presented on September 1, 2013 with Appellant.  Officer West observed nystagmus in situation where, by his own admission, no alcohol was present.

14

Based on Officer West's own testimony, it is a reasonable possibility that Appellant was not impaired.

Officer West did no investigation, either pre or post arrest, to determine whether or not the prescription medications that Appellant was taking could have caused the nystagmus observed in Appellant's eyes without Appellant being impaired. At the time of conducting the test, Officer West knew that Appellant had taken a pain killer approximately two hours before the traffic stop, and was on an anti-anxiety medication. (R.R. 2, p. 74-75). Officer West never asked Appellant what medications he was on. He never asked Appellant when he took the medications or how much he took. At trial, the jury learned that Appellant had been prescribed hydrocodone, amphetamine salt, Clonopin and Xanax at the time of the arrest. (R.R. 2, p. 75). However, the State offered no evidence whatsoever that Appellant was abusing these medications. In fact, Officer West testified he had no reason to believe Appellant took his prescription medication other than the way it was prescribed. (R.R. 2, p. 122).

There is no way to know, based on Officer White's poor investigation, whether or not the prescription drugs Appellant was taking caused the nystagmus observed in Appellant's eyes. Instead, the State tried to conclude that because Appellant had legally obtained prescriptions, he must be intoxicated. Such a leap is not reasonable nor is it rational. It is much more reasonable to conclude that Appellant was arrested on September 1, 2013 because he was rude and disrespectful to both law enforcement and to

15

Phillip Erickson. When asked to describe Appellant's demeanor on the day in question, interestingly, Officer White responded, not that appellant was acting drunk, disoriented, sleepy, or any number of other descriptors that are associated with intoxication, but instead replied that Appellant was arrogant and cocky. A review of the video introduced into evidence in this case would support Officer White's description. Appellant was, indeed, arrogant and cocky during his interactions with Officer White. He also used foul language, was disrespectful, and was an all-around unlikeable guy. That same review of the video, however, does not show any signs of intoxication that cannot be ruled out by Appellant's physical issues. It is reasonable to conclude that Officer White's interaction with Appellant that morning were colored by Appellant's obnoxious attitude. It is also reasonable to believe that the jury despised Appellant for that same behavior. However, it is not a crime to be an obnoxious, dislikable person, nor is it evidence of intoxication.

It is clear from the evidence presented at trial that Appellant's mental faculties were not impaired. There was no erratic or bad driving in this case. According to both State's witnesses, Appellant was not slurring his speech, was articulate in his conversations, did not have red or glassy or bloodshot eyes, did not have constricted pupils that are characteristic of intoxication from narcotics like hydrocodone, was not stumbling when walking, and was able to perform the field sobriety tests that look for mental impairment perfectly. The evidence presented by the State that Appellant was

16

physically impaired is not trustworthy due to the documented physical limitations

Appellant suffers from.  The evidence presented by the HGN test is equally

untrustworthy as Officer White did not investigate whether or not the nystagmus present

was caused by the medication Appellant had taken and not by intoxication.

Given the evidence presented at trial, a rational trier of fact could not have found

Appellant was intoxicated while operating a motor vehicle in Hunt County, Texas.

Therefore, Appellant's conviction should be overturned and in all things reversed and

rendered.

PRAYER FOR RELIEF

For the reasons stated hereinabove, it is respectfully submitted that, upon appellate

review, the Court of Appeals should reverse the judgment in this case and set aside

Appellant's conviction and sentence.

Respectfully submitted,


 _/s/Jessica Edwards_
JESSICA EDWARDS
Attorney for Appellant
State Bar Number - 24000994
P.O. Box 9318
Greenville, Texas 75404
Telephone Number - (903) 513-0150
Facsimile Number - (903) 200-1359
jessicaedwardslaw@gmail.com

17

**CERTIFICATE COMPLIANCE OF TYPEFACE AND WORD COUNT**

In accordance with Texas Rules of Appellate Procedure 9.4(e) and (i), the undersigned attorney of record certifies that Appellant's Brief contains 13-point typeface and contains 3,701 words and was prepared on Microsoft Word 2010.

/s/ Jessica Edwards_____
Jessica Edwards
Attorney for Appellant

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to Hunt County Attorney Joel Littlefield, 4th Floor Hunt County Courthouse, Greenville, TX 75401, on this the 2nd day of February, 2015, by hand delivery.

/s/ Jessica Edwards_____
Jessica Edward
Attorney for Appellant